394 So.2d 245 (1981)
STATE of Louisiana
v.
Charles BRETZ.
No. 66935.
Supreme Court of Louisiana.
January 26, 1981.
Rehearing Denied March 2, 1981.
*246 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Richard J. Petre, Jr., John H. Craft, Asst. Dist. Attys., for plaintiff-appellee.
Julian R. Murray, Jr., Murray, Murray, Ellis, Braden & Landry, New Orleans, for defendant-appellant.
BLANCHE, Justice.
Defendant, Charles Bretz, was charged by a grand jury indictment with attempted first degree murder. Following a trial, the twelve member jury returned a verdict of guilty of attempted manslaughter. Defendant's motion for a new trial was denied, and he was sentenced to three years at hard labor. On appeal, the defendant argues ten assignments of error.
On April 30, 1979 at approximately 9:45 p. m., the defendant, a 22 year old off-duty New Orleans Police officer, was driving his *247 girlfriend home. What transpired that night is difficult to discern as two completely different stories were presented to the jury.
According to the defendant, he believed he was being followed by another vehicle, the driver of which was to become the ultimate victim. Since the defendant had been involved in a prior off-duty arrest, he felt some concern that a participant in this incident might be following him. To check this theory, the defendant drove an erratic pattern instead of taking his girlfriend directly home, and concluded that he was being followed. Defendant then drove to a Tastee Donut Shop in the hope of finding some other police officers there taking a break, or to use the telephone to call for help.
The vehicle following him pulled alongside the defendant's car in the parking lot. Defendant observed the driver of that car and made a mental note of the car's license plate number. When the driver got out of his car, the defendant started to back out. Seeing this, the other driver hurriedly got into his car and backed out also. To avoid an automobile chase, the defendant put his car back in its original parking space, whereupon the other driver positioned his car so the defendant was blocked in.
The defendant looked over his shoulder at the driver and saw a single-barrelled shotgun being pointed at him. His girlfriend likewise said she saw the shotgun and immediately ducked down on the car seat. The defendant identified the victim as the driver of the car who was pointing a shotgun at him. He estimated the driver pointed the shotgun at him for approximately 8½ seconds, and then drove off at a high rate of speed.
Defendant and his girlfriend then went into the Tastee Donut Shop where he wrote down the car's license plate number on a napkin and called his platoon commander, Lieutenant Alberts, and told him what was happening. At that time, Lieutenant Alberts told the defendant to stay in the donut shop until he arrived on the scene.
Soon thereafter, defendant saw the car's driver walking toward the donut shop and for the safety of the patrons, decided to confront him outside. He showed the driver his police identification and arrested him for aggravated assault with a shotgun. When the driver began walking away, the defendant tried to restrain him by tugging on his shirt. Having no success, the smaller defendant delivered two karate-like kicks to the driver's back. Still being unable to stop him, the defendant struck the driver on the side of his head with his service revolver.
The driver took off running toward the Dixie Liquor Store with the defendant in pursuit. The driver got there first and ran behind the bar. Upon entering the lounge, the defendant yelled to the bartender, asking him if the driver worked there or belonged behind the bar, to which he received a negative answer. The defendant ran down to the end of the bar where he saw the driver rummaging behind the bar. Both the defendant and the driver testified they did not know a gun was behind the bar, though a handgun was found under some paper bags beneath the cash register, which was located in the center of the bar.
When the driver turned toward him, the defendant, believing he had a weapon, shot him three times. The defendant then put his foot on the driver's back, ordered the lounge doors locked, and stated other police officers were on their way.
Defendant's platoon commander and the investigating officers arrived shortly thereafter. They kept the defendant and his girlfriend apart and took their statements. They found the driver's car, which fit the description the defendant had given them, and which had the license number the defendant had written down. Also, some keys found lying beside the wounded driver fit this car. As a result of this evidence, the driver was arrested for aggravated assault with a shotgun. This charge was subsequently dropped as no shotgun was found, and the only item faintly resembling one was a bayonet found under the car seat.
The victim, who was the alleged car driver who followed the defendant, had a completely *248 different story of what happened leading up to his being shot by the defendant. Earlier that evening he had been at a friend's house working on her car. She testified he left her at 9:33 p. m., remembering the time from the car radio having stated it. He then drove to the Dixie Liquor Store where a friend bought him a beer. This was confirmed by three witnesses at the lounge. Deciding that he had inappropriately parked his car, he went outside to move it. After doing so, he was walking across the parking lot that is bordered by the Tastee Donut Shop, a Time Saver store, and the Dixie Liquor Store. It was there that he was confronted by the defendant. There is conflicting testimony as to whether the defendant identified himself as a police officer, with some of the state's witnesses saying he did, others saying he did not, and the victim saying he did not.
After having been confronted by the defendant and after having heard a racial slur from the defendant, the victim began walking back to the lounge. He was in agreement that the defendant's actions to restrain him were unsuccessful and that he finally ran back to the lounge once he had been struck by the defendant's service revolver. Once there, he sought to get behind the bar so that he could put the bartender between himself and the defendant. He denied rummaging for a gun behind the bar and stated he was shot three times by the defendant in the side and back, though he did not threaten the defendant in any manner.
The jury heard these two versions of what transpired. Besides the defendant, the defense called the girlfriend, the two investigating officers, and the defendant's New Orleans Police Department partner. The state primarily based its case upon the victim, two parking lot spectators and three persons in the lounge. After five total hours of deliberation, the jury returned a guilty verdict of attempted manslaughter.

Assignments of Error Numbers 6-10
Defendant contends the trial court erred in allowing the state to argue from facts outside the evidence and in failing to grant a new trial based upon improper prosecutorial arguments.
The scope of closing argument is limited to the evidence admitted, the lack of evidence, conclusions of fact drawn therefrom, and the law applicable to the case. C.Cr.P. art. 774.
Particularly unwanted are comments by the prosecutor referring to matters allegedly within his personal knowledge, but not in evidence. State v. Kaufman, 304 So.2d 300 (La.1974). The reason for this prohibition is that such remarks attempt to add to or subtract from the actual evidence in the record through the influence of the prosecutor's official position. The jury may give greater weight to these observations than to the actual evidence and may, consequently, determine guilt or innocence on the basis of the prosecutor's opinion.
However, not every remark of this type will warrant reversal. C.Cr.P. art. 921. Before a verdict will be overturned on the basis of improper argument, this Court must be thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Carthan, 377 So.2d 308 (La.1979); State v. Heads, 370 So.2d 564 (La.1979).
If the prosecutor's argument is expressly or impliedly based upon the evidence, then no error is committed, and statements in closing arguments do not go outside of the evidence if the inference drawn from the evidence is not implausible. State v. Lockett, 332 So.2d 443 (La.1976).
Generally, we find the prosecutor's statements in closing argument and in rebuttal closing argument are impliedly based upon the evidence and, even if they appear improper, we do not believe they clearly influenced the jury to the defendant's prejudice.
Specifically, we will address each complained of statement and briefly explain why we do not see it as improper or influential.
(1) During the state's closing argument:

*249 "You have police investigating a police shooting. This defendant works with them when they arrive on the scene there. Some other agency should be investigating the shooting. You can't really blame the police. They are going after ____ The first thing they are going to look for is to justify his actions."
The defense objected, and the judge overruled the objection. The state was arguing from the evidence, for the victim had been arrested and charged for aggravated assault with a shotgun when the investigating officers knew no shotgun was found. This does make the investigation look suspect and the state's comment about this was proper.
(2) During the state's closing argument:
"As I've said, this has been a very informed trial. You have had more facts in front of you than almost any jury I have ever seen."
The defense objected, and the state withdrew the statement. The defense did not request an admonition. This comment could be implied from the fact that the jury had heard a three-day trial with a myriad of facts. Although the prosecutor's observation concerning his sightseeing experiences was improper, it was also innocuous and we fail to see how this comment could have influenced the jury to the defendant's prejudice.
(3) During the state's rebuttal closing argument:
"What you have heard today is what every defense attorney does when he does not have a case and they can't justify what their client has done."
The defense objected, and the judge overruled the objection. This is another way of arguing that the defendant will resort to some smoke screen tactic to divert the jury's attention when he does not have a case. The prosecutor is permitted to argue the failure of the defense counsel to justify the defendant's actions. To the extent that the prosecutor's knowledge concerning what every defense counsel does was without foundation and outside the record, the same was irrelevant and harmless argument. We find the argument did not prejudice the defendant.
(4) During the state's rebuttal closing argument:
"They are following him. Officer Bretz, why would they be following you. The defense says, I don't know. We can't give you a reason. He is a little paranoid. Someone is following him, but he doesn't know why. You sure as heck should know why somebody would be following you."
There was no defense objection made at the time this statement was made. Earlier, the defense had opened the door by referring to the prior incident in which the defendant was involved while questioning Lieutenant Alberts, and eliciting the same testimony from the defendant. The trial judge later ruled neither side was to pursue this avenue, and the state had complied with this order by not cross-examining anyone as to the prior incident. This comment may simply be regarded as a permissible inference from the lack of evidence upholding the defendant's position.
(5) During the state's rebuttal closing argument:
"There may be a reason why the lieutenant didn't want that particular man to go out and confront somebody. Maybe the lieutenant knew him."
The defense objected, and the judge sustained the objection. The defense did not request an admonition. This comment was made to refocus the jury's attention on the characteristics of the defendant as a person with a quick temper and foul demeanor as exhibited on cross-examination. This was not mere speculation, for the trial judge referred to the defendant's attitude while on the witness stand in his sentencing reasons. Therefore, the state's reference to the lieutenant's knowledge of the defendant's personality was a proper reference from the evidence, as the state was merely alluding to a fact which the jury could draw from their own observations.
(6) During the state's rebuttal closing argument:

*250 "This is just natural. We told you some of our witnesses would be inconsistent, because we were honest with you. We put on every bit of evidence that we had, not hiding anything."
The defense objected, and the judge overruled the objection.
(7) The state then continued:
"There is no attempt to fool anybody here. There is not (sic) attempt to pull the wool over your eyes."
There was no defense objection made, as such would have been redundant. Both of these comments were provoked by the defense's closing argument where he speculated as to the state's presentation of its case. We regard the remarks of the prosecutor concerning the quality of his own case as proper rebuttal.
At the new trial hearing, the defense asserted that the state had another witness under subpoena whom it chose not to call; therefore, the above comments were misleading. The defense doesn't suggest this witness would have been favorable to his case, nor that the state failed to comply with his discovery motion. The state is not required to put on every subpoenaed witness, and the comments regarding its presentation of the case were proper.
(8) During the state's rebuttal closing argument:
"... there is a tendency by the police to help other policemen who are in trouble."
The defense objected, and the objection was sustained.
(9) The state continued:
"Well, there is always an excuse when a policeman uses excessive force. They always come up with something."
The defense did not object to this comment. These two statements were clearly implied from the evidence as the two investigating officers' actions at the crime scene made the state's comments justifiable. The officers questioned the seriously wounded victim without reading him his rights and while the paramedics were working on his wounds. Then, they arrested him and charged him with aggravated assault with a shotgun when no shotgun was found. The state's comments are a direct inference of this evidence brought out at the trial, and were proper.
We have briefly analyzed each complained of comment made by the state and find no reversible error, whether viewing the comments singularly or as a whole. We find the state's comments were impliedly based upon the evidence and did not clearly influence the jury to the prejudice of the defendant.
For the above reasons, these assignments of error are without merit.
Assignments of Error Numbers 2 and 4
Defendant contends the trial court erred in allowing the prosecutor to cross-examine the defendant and the defense witness, Patricia Balderas, regarding their personal relationship vis-a-vis the defendant's marital status.
During cross-examination, the defendant was questioned about his romantic interest in the defense witness and, although reluctant to do so, he finally admitted a romantic relationship with the witness. After obtaining this admission, the prosecutor then obtained the further admission that the defendant was a married man, though not married to the witness. The defense objected, and the judge sustained the objection.
It was proper to show the defendant's relationship with the witness to reveal any possible bias. R.S. 15:492. However, it was not relevant to show that the admitted relationship existed at a time when the defendant was married to another, and the judge properly sustained this objection because of its lack of relevance.
Later, while the witness was testifying on cross-examination, the prosecutor elicited from her the fact of her romantic relationship with the defendant. Continuing the examination, and notwithstanding the fact that the judge had ruled inadmissible the fact of the defendant's marriage, the prosecutor proceeded to ask the witness if she knew the defendant was married.
*251 Again, the defense objected and complained to the judge that the court had previously ruled the question inadmissible and, despite the ruling, the prosecutor had asked the same question again. The court maintained that it had not ruled that the question was improper, though the record clearly shows that he had. This time the court permitted the question on the ground that the evidence was already in the record, which was correct.
Nevertheless, the record clearly shows both witnesses had answered the questions regarding their relationship and the defendant's marital status before the defense objected. A contemporaneous objection is necessary to preserve the issue for appellate review. C.Cr.P. art. 841. An objection made after the evidence is before the jury comes too late. State v. Foote, 379 So.2d 1058 (La.1980).
Even had the questions concerning defendant's marital status been properly objected to, this would still not have constituted reversible error as there has been no clear showing by the defendant that the jury was prejudiced by the questions.
These assignments of error are without merit.

Assignment of Error Number 5
Defendant contends the trial court erred in refusing to allow the defense the opportunity to introduce evidence of prior consistent statements made by the defendant and Patricia Balderas.
As stated in the factual resume hereinabove, the jury was faced with two very different stories as to what happened on the night of the shooting. To substantiate his allegation that the victim followed the defendant, the defendant sought to show that the defendant and Patricia Balderas made the identical statement about what happened before they were allowed to get together and collaborate on their stories. The defendant sought to accomplish this through the questioning of Sgt. McKenzie, the officer who investigated the shooting and who had taken the defendant's statement shortly after the shooting.
Sergeant McKenzie did testify as to his role in the investigation and the statement he took from the defendant. Defense counsel then questioned him regarding the statement made by Patricia Balderas at the same time. The prosecutor objected to this testimony as hearsay. The defense attorney countered that the truth of the statement was not at issue but, rather, whether the defendant's statement and Patricia Balderas' statement were consistent.
The objection was argued out of the presence of the jury. The defense counsel stated that he planned to have the witness compare the two statements, as he had prepared the defendant's and read Patricia Balderas' earlier, and to say that they were consistent. The state objected to the witness being asked to draw such a conclusion, as he was not an expert. The trial court properly ruled that to ask Sgt. McKenzie whether the statements were substantially the same would be asking for a conclusion and would be improper.
A witness may not testify to any impression or opinion that he may have. R.S. 15:463. A qualified expert may give opinion testimony, R.S. 15:464. A witness may testify as to natural inferences from something he has observed. State v. Taylor, 347 So.2d 172 (La.1977).
Sergeant McKenzie, who was not qualified as an expert, testified that he only took the defendant's statement and was merely present when Patricia Balderas' statement was taken. Moreover, he admitted he had not read the statements recently. Thus, even using the natural inference exception of Taylor, this witness was not in a position to state a conclusion regarding the similarity of these statements.
The point of the defendant's argument was to let the jury know that the defendant and Patricia Balderas had made identical statements on the night of the incident. Sgt. McKenzie did testify that the defendant and Patricia Balderas did not talk to each other prior to giving their statements. This was drawn to the jury's attention during closing argument by the defense counsel.
*252 It appears that the defendant's purpose was to place the contents of the statement before the jury; thus, the statement was properly excluded as hearsay. R.S. 15:434. There was no need for Sgt. McKenzie's conclusions as to the defendant's and Patricia Balderas' statements.
This assignment of error is without merit.

Assignment of Error Number 1
Defendant contends the trial court erred in refusing to allow cross-examination of the victim on the issue of whether he had prior confrontations with police officers.
When the victim first took the stand on direct examination, the state's attorney asked him if he had any prior convictions. The victim responded that he had been convicted of simple battery five years earlier, but he had no other convictions before or after that.
During cross-examination of the victim, the defense counsel asked him if he had ever had a previous confrontation with a police officer. The state promptly objected to the question before it was answered, and the objection was sustained. The defense counsel then argued that he was attempting to show possible bias, but the court still sustained the objection.
The defendant's attempt to elicit this information from the victim was made to show the victim's bias toward the police. R.S. 15:492 does allow for impeaching the credibility of a witness by showing he is biased. However, the bias permitted to be exposed must be personal against the defendant, rather than general in nature. State v. Robinson, 337 So.2d 1168 (La.1976); State v. Darby, 310 So.2d 547 (La.1975).
In this case, the defendant's question could only show a general bias against the police, not one against this particular defendant. Both the defendant's and the victim's testimony reveals they did not know each other prior to the incident. Thus, it would be impossible to show the victim's personal bias against this unknown defendant.
Furthermore, the jury was made aware from the start of the victim's prior conviction for simple battery, so they knew he had had prior experience with the police. This was amplified by the defendant in closing argument, which the jury obviously considered.
This assignment of error is without merit.

Assignment of Error Number 4
Defendant contends the trial court erred in giving him an excessive sentence.
The trial court sentenced the defendant to three years at hard labor, when he had a potential maximum sentence of 10½ years. The defendant alleges three years is too long, as he was a "model citizen" with no previous record and as an ex-policeman, his life will be in jeopardy in Angola.
In pronouncing sentence, the trial judge stated that he took into consideration the severity of the victim's injuries, the defendant's attitude on the stand, and the fact that the defendant was a first-time offender. Thus, the trial judge properly used and stated the guidelines of C.Cr.P. art. 894.1 in determining the defendant's sentence.
In closing argument the defense counsel strongly argued that the defendant should not be held criminally liable for his acts; rather, if defendant is to be found at fault, it is that he was civilly liable, and since the victim has a pending $7 million lawsuit against the defendant, that is satisfactory punishment. We disagree for, though using C.Cr.P. art. 894.1, the trial judge may consider restitution to the victim, we do not regard a pending civil lawsuit as restitution.
The trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of manifest abuse of his discretion. State v. Sepulvado, 367 So.2d 762 (La.1979). We find no abuse in the trial judge's sentence to this defendant.
This assignment of error is without merit.
For the above reasons, the ten assignments of error made by the defendant are without merit, and the defendant's conviction and sentence are affirmed.
AFFIRMED.
*253 DIXON, C. J., concurs.
DENNIS, J., dissents with reasons.
LEMMON, J., dissents.
DENNIS, Justice, dissenting.
I respectfully dissent.
The prosecuting attorneys, during their closing arguments, referred to evidence outside the record several times. To challenge the credibility of the police officers who testified for the defendant, an assistant district attorney argued:
"You have police investigating a police shooting. This defendant works with them when they arrive on the scene there. Some other agency should be investigating the shooting. You can't really blame the police. They are going after.... The first thing they are going to look for is to justify his actions."
To discredit the arguments of defense counsel a prosecuting attorney accused him of doing "what every defense lawyer does when he does not have a case and they can't justify what their clients have done...." To magnify the weight of the prosecution's case an assistant district attorney told the jury that "you have had more facts in front of you than almost any jury I have ever seen." Defense counsel made timely objections to each of these statements. The trial court overruled his objections as to two of these objections and withheld ruling on the last statement after the prosecuting attorney said he would withdraw it.
A counsel's argument is in its purpose a connected presentation of the conclusions of fact supposed to have been proved by the evidence tending in favor of his client. He restates the evidence, and he reasons from the evidence. He is not a witness. Any presentation of fact, therefore, which is made by him in argument, must not be an assertion made upon his own credit; it must be based solely upon those matters of fact of which evidence has already been introduced or of which no evidence need ever be introduced because of the notoriety as judicially noticed facts. To bring forward in argument an assertion of fact not of these two sorts is to become a witness; and to be a witness without being subjected to cross-examination is to violate the fundamental principle of the hearsay rule. 6 Wigmore, Evidence § 1804 (Chadbourn rev. 1976).
This fundamental principle has been incorporated in our statutory law by La.C. Cr.P. art. 774, which provides that the argument of both prosecution and defense "shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. * * *"
When the argument of a district attorney goes beyond its proper scope, the defendant is entitled to have the trial judge admonish the jury to disregard the argument, if it might create prejudice against the defendant, or to have a mistrial ordered if an admonition is not sufficient to assure the defendant a fair trial. La.C.Cr.P. art. 771; art. 774 comment (c). If a defendant's timely and properly grounded objection to an improper argument is overruled, he may raise the ruling on appeal, even though he failed to request an admonition or a mistrial. State v. Hamilton, 356 So.2d 1360 (La.1978).
Nevertheless, a trial court's failure to sustain a defendant's objection to a prosecutor's argument not based on the evidence or matters which may be judicially noticed is not reversible error if it is apparent to the jury that it is expressly or impliedly only based on the evidence presented to the jury rather than on personal knowledge of facts outside the record, State v. Hamilton, supra; State v. Kaufman, 304 So.2d 300 (La. 1974), or if the improper argument did not create prejudice against the defendant or deprive him of a fair trial. La.C.Cr.P. art. 771.
Applying these precepts to the present case, I would conclude that the prosecuting attorneys' arguments were both prejudicial and obviously based on their knowledge of facts outside the record. The representation of facts made by them regarding typical police practices, customary tactics of *254 desperate defense counsel, and the weight of the state's case, were assertions made on their own credit; they were not based on matters of fact of which evidence had been introduced or which may be judicially noticed. The assertion that policemen in general color their investigations and testimony to favor fellow officers suspected of crimes, in particular, presented a clear and substantial risk of creating prejudice against the defense and depriving the defendant of a fair trial. Such expressions by a prosecutor are a form of unsworn, unchecked testimony adding to the probative force of the trial testimony the weight of the prosecutor's personal knowledge of police behavior. Cf. State v. Kaufman, supra. To a somewhat lesser extent, the same may be said of the prosecuting attorney's assertions as to the weight of the state's case in comparison with other cases within his experience and the typical desperation tactics of defense counsel. It is not necessary to consider whether either of these latter standing alone might create reversible prejudice against the defendant in the minds of the jury. It is evident that through all of the improper prosecution arguments discussed, and one other to which an objection was sustained,[*] that the prosecution succeeded in creating in the minds of the jury the impression that policemen are generally unreliable witnesses in prosecutions against fellow officers. These representations of fact, for which there was no evidence introduced, were extremely prejudicial since the testimony of Bretz's fellow officers corroborated his version of the altercation in several important respects. Therefore, the failure of the trial court to sustain the defendant's objections constituted reversible error.
NOTES
[*] "[T]here is a tendency by the police to help other policemen who are in trouble."