408 So.2d 1229 (1982)
STATE of Louisiana
v.
James Michael DUPRE.
No. 81-KA-0683.
Supreme Court of Louisiana.
January 25, 1982.
*1230 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Duncan Kemp, Dist. Atty., Joseph H. Simpson, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Eric L. Pittman, Springfield, for defendant-appellant.
LEMMON, Justice.[*]
This is an appeal from a conviction of attempted aggravated rape and a sentence of 50 years imprisonment. The principal assignments of error involve the denial of a motion for continuance and the denial of a motion for mistrial based on improper closing argument by the prosecutor.[1]
Defendant and Richard Dunn abducted a young woman at gunpoint as she entered her automobile in the parking lot of a Baton Rouge shopping center. Defendant then drove the victim's car to a lonely country road in Livingston Parish, threatening on several occasions to kill her and to force her to take drugs. After defendant and Dunn both raped the victim, they forced her to accompany them as they continued to drive around. Defendant eventually departed, leaving the victim in Dunn's company. Dunn brought her back to the site of the initial rape and again raped her before he finally released her. The victim then drove back to Baton Rouge, where she sought medical attention and reported the incident to the police.
*1231 Eventually, defendant and Dunn were arrested and were identified by the victim at a line-up. After both confessed, they were indicted by the East Baton Rouge Parish grand jury for aggravated kidnapping and by the Livingston Parish grand jury for aggravated rape.[2] The state later amended the indictment to charge attempted aggravated rape.[3] Defendant principally relied on the defense of insanity, which was rejected by the jury.[4]
Denial of Motion for Continuance
Defendant was indicted on June 22, 1976, and counsel was appointed to represent defendant prior to the June 30 arraignment. At an October 25, 1976, hearing on defendant's capacity to stand trial, the court ordered defendant committed to a mental hospital in accordance with a joint stipulation.
In February, 1977, the court ordered that defendant be returned to the Livingston Parish jail. On September 28, 1977, defendant was tried in Baton Rouge and convicted of aggravated kidnapping.
The rape case was set for trial on December 6, 1977. Although the minutes do not reflect the date of the setting for trial, counsel asserted in a motion for continuance, filed on the date of trial, that he was not notified of the prospective trial date until a week before the December 6 date. Counsel contended he did not have adequate time to prepare for trial because defendant was shuffled back and forth to East Baton Rouge Parish in connection with the kidnapping charges and to the East Louisiana State Hospital in connection with proceedings to determine his capacity to stand trial.[5]
If the assertions by appellate counsel (who did not represent defendant at trial) are accurate, there was indeed a very short period of time between the notice of trial and the date of trial. Nevertheless, trial counsel had been representing defendant for over a year prior to the trial and had made several court appearances in connection with the insanity defense. Therefore, the actual preparation of the insanity defense was ongoing over a period of time, and trial counsel, who was familiar with the medical examinations and treatments, apparently had only to subpoena the experts and their records in order to present this sole defense.
Counsel has not made any specific allegations of prejudice resulting from the denial of the continuance, nor has he shown how the defense or the preparation of evidence was in any way impaired because the case was brought to trial on December 6. When the defendant does not allege specific prejudice, a conviction will not be overturned because of the denial of a continuance, *1232 unless the preparation time was so minimal as to cast doubt on the basic fairness of the proceedings. State v. Durio, 371 So.2d 1158 (La.1979).
Here, defendant failed to carry his burden of showing that the trial court abused its discretion in denying the motion for a continuance. See C.Cr.P. Art. 712; State v. Durio, above. Compare State v. Winston, 327 So.2d 380 (La.1976); State v. Benson, 368 So.2d 716 (La.1979). There was no serious dispute as to the identity of the rapist or the facts of the rape. Trial counsel for defendant had ample "preparation time" to develop the insanity defense for the trial which was held more than one year after his appointment following defendant's indictment. The rather short notice of trial, under these circumstances and in the absence of an allegation or showing of specific prejudice, did not amount to a denial of due process, insofar as this record shows.
Denial of Motion for Mistrial
In his closing argument the prosecutor (who is not the prosecutor representing the state in this appeal) assailed the defense of not guilty by reason of insanity. Under the guise of explaining the consequences of such a verdict, he ridiculed the law pertaining to the commitment of an accused to a mental hospital. Interspersed in the prosecutor's reading of the statute were "folksy" comments which were apparently designed to convey the impression that the legislative scheme in practice is a farce.[6]
*1233 When defense counsel belatedly objected at the end of the prosecutor's disparaging remarks about the insanity defense, the trial court sustained the objection and admonished the jury to disregard the prosecutor's comments. No motion for a mistrial was urged. Therefore, these comments present nothing for this court to review. See State v. Williams, 375 So.2d 364 (La. 1979). See also State v. Cumbie, 380 So.2d 1031 (Fla.1980).
Later, in rebuttal argument, the prosecutor characterized defendant's lack of attention to the proceedings as a trick to feign insanity. The prosecutor used a joke to compare defendant's behavior to that of a young soldier who tricked an army psychiatrist into certifying him to be insane, thereby obtaining a discharge.[7] The objection following the prosecutor's joke was overruled.[8]
Although the prosecutor's use of a joke was arguably an acceptable method of illustrating his theory that defendant's lack of attention during the trial was "part of an act" to support his insanity defense, the prosecutor had previously made disparaging remarks about psychiatrists and about legislative and judicial efforts to deal with the complex problem of criminal behavior by insane persons. The joke in all probability was a further effort to demean the legislative scheme. Nevertheless, we cannot say that the story was so prejudicial as to warrant the drastic remedy of mistrial or reversal.
Finally, the prosecutor quoted an editorial writer's comments about the repugnance of the crime of rape.[9] The trial court also overruled defense counsel's objection to these comments as an attempt to inflame the jury.
The prosecutor's comments constituted arguments outside the record. Arguments which allude to facts outside of the record are not permitted by C.Cr.P. Art. 774.[10] Similarly, while counsel may argue *1234 "the law applicable to the case", he should not endeavor to influence the jury's verdict by making the legislative scheme appear ridiculous or overly protective of a defendant's rights (as opposed to society's rights).[11] Although this court has admonished prosecutors not to argue outside of the record[12] and not to demean the law in closing argument[13], we have also repeatedly adhered to the theory that a conviction will not be reversed because of improper closing argument unless this court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. See State v. Prestridge, 399 So.2d 564 (La.1981); State v. Bretz, above.
Since we do not believe the comments contributed to the verdict, we affirm the conviction. Nevertheless, as Chief Justice Dixon pointed out in State v. Michelli, 301 So.2d 577 (La.1974) (dealing with an unrelated issue), there is some danger that trial judges and lawyers, being practical men and women, may misread a rather consistent application of "harmless error" principles to certain types of erroneous rulings involving misconduct as tacit approval by this court of such practices. We here reemphasize that such practices must be avoided and that reversals will be rendered, if necessary to curb misconduct.
We are not unsympathetic to the fact that closing statements are made in the "heat of battle". Some prosecutors (and some defense counsel) are fond of conveying colloquial wisdom to jurors, and they feature themselves (often accurately) as masters of oratory skills. Indeed, a forceful and thought-provoking closing statement by a skillful lawyer is an important tool in convincing a jury that the evidence presented is (or is not) sufficient. Nevertheless, the restrictions imposed by the Legislature (basically confining argument to the law and the facts and to the inferences to be drawn therefrom) are not unreasonable and do not involve undue limitations. Each counsel has ample latitude without extending his comments beyond the bounds of propriety.
In terms of precious judicial time spent retrying cases which (like the present case) fulfill the essential demands of fairness and justice, the reversal of a conviction after a fair trial is generally regarded as too high a price to exact for rigid and unyielding enforcement of Art. 774. Furthermore, a great deal of credit should be accorded to the good sense and fairmindedness of jurors who have heard the evidence and who know what was and what was not proven. In light of these considerations, we have adopted a reasonable standard for review, leaving academic standards of enforcement to the sound judgment of trial judges, as well as to self-restraint which ought to be practiced by the bar. We decline to reject that standard in this case, but we stand ready to do so if prosecutorial misconduct may affect the determination of guilt or if a prosecutor continues a practice of disregarding the statutory limitations on argument.
*1235 Defendant's conviction and sentence are affirmed.
DIXON, C. J., concurs.
NOTES
[*] Judges Pike Hall, Jr., Charles A. Marvin and Jasper E. Jones of the Second Circuit Court of Appeal participated in this decision as Associate Justices ad hoc, along with Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.
[1] The remaining assignments of error involve only settled principles of law and are treated in an unpublished appendix attached to this opinion.
[2] Defendant was convicted of aggravated kidnapping by a Baton Rouge jury. That conviction has been affirmed. See State v. Dupre, 369 So.2d 1303 (La.1979).
[3] The amendment was necessary because of the United States Supreme Court's decision in Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), declaring the death penalty unconstitutional in cases of aggravated rape of an adult female who was not killed. See also Selman v. Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976). The effect of these decisions was to leave the 50-year penalty for the lesser responsive offense of attempted aggravated rape as the only remaining legislatively authorized penalty for defendant's 1976 crime. See State v. Bryant, 347 So.2d 227 (La.1977); State v. Craig, 340 So.2d 191 (La.1976); State v. Sledge, 340 So.2d 205 (La.1976).
[4] The trial court, at the state's suggestion, erroneously instructed the jury that the state must carry the burden of proving the sanity of the accused beyond a reasonable doubt. Nevertheless, the state carried the burden, and there is no question as to the sufficiency of the evidence on that issue. See State v. Price, 403 So.2d 660 (La.1981); State v. Lee, 395 So.2d 700 (La.1981).
[5] Defendant made several trips to East Baton Rouge Parish and to the East Louisiana State Hospital. He was by no means residing exclusively in the Livingston Parish jail during his lengthy period of pretrial incarceration. However, Livingston Parish is adjacent to East Baton Rouge Parish, and an interstate highway connects them. Both are in close proximity to East Feliciana Parish, the site of the state mental hospital. Defense counsel does not allege or show that he was denied access to defendant at either place.
[6] The prosecutor said:

"Now, I want to read to you, since one of the defenses is not guilty by reason of insanity, Article 654 and 657 [655], which are also a part of the charge that was requested by us. Okay. What happens if you find him legally insane? `When a verdict of not guilty by reason of insanity is returned in a capital case, the court shall commit the defendant to a proper mental institution for custody, care and treatment.' That does not apply to you.
"`When a defendant is found not guilty by reason of insanity', that's one of your verdicts, `... not guilty by reason of insanity in any other felony case, the court shall remand him to the parish jail', that means send him upstairs, `[or to a private mental institution approved by the court] and shall promptly hold a contradictory hearing at which the defendant shall have the burden of proof, to determine whether the defendant can be discharged or can be released on probation, without danger to others or to himself.' It wouldn't surprise me if the Supreme Court now changed that and says the State has got to prove it, but be that as it may, that's the law today. So, in other words, you go upstairs and you have a hearing and you have psychiatrists come in here and one of them say [sic] he can be turned loose on society and another one say [sic] he can't be and then the judge makes up his mind. `If the court determines that the defendant cannot [be] released without danger to others or himself, it shall order him committed to a proper state mental institution [or to a private mental institution approved by the court] for custody, care and treatment. If the court determines that the defendant can be discharged or can be released on probation, without danger to others or to himself, it shall either order his discharge, or order his release on peobation [sic], subject to specified conditions for a fixed or an indeterminate period.' If I just read you that you say, all right, they have one hearing and that's the end of it, but that's not the end of it. There's never any end to criminal law, let me assure [you] of this, not as long as they've got pardon boards and parole boards and political influence and everything else. All right. `An application for discharge or release on probation.' Now, let's suppose that he is sent to a mental institution. And `[W]hen the superintendent of a mental institution is of the opinion that a person committed pursuant to Article 654', which I just read to you, `can be discharged or can be released on probation without danger to others or to himself, he shall recommend the discharge or release of the person in a report to the court by which the person was committed'.
"`A person committed pursuant to Article 654, may make application to the court', in other words he can do it himself, `by which he was committed, for discharge, or for release on probation', and if he does his relatives will he there helping him. `[S]uch application by a committed person may not be filed until the committed person has been confined for a period of at least six month after the commitment.' So, big deal, he'd be there at least six months. `If the determination of the court is adverse, he shall not be permitted to file another application until one year has elapsed [from the date of determination']. So, another big deal, he has to wait a year.
"`Upon receipt of such application the court shall direct the superintendent of the mental institution where the person [was] committed to make a report and recommendation, within a period specified, as to whether the person can be discharged or can be released on probation [without danger to others or to himself'.] So the superintendent, one of these psychiatrists, as they call themselves, which I regret that I did not get the opportunity to cross-examine, when one of them comes down here to report to the judge he says, look, he's okay, discharge him. What has the Judge got to go on other than that?" (Emphasis supplied.)
[7] The prosecutor said:

"The defendant who you will observe has paid very little attention to you or to me or to his lawyer and I don't know why he didn't pay any attention. It could be like the boy who went in the service and kept going around picking up little pieces of paper and saying this is not it, this is not it, for months. Finally they sent him to a psychiatrist and he said, you know, this boy is crazy and he gave him a little piece of paper, says you are discharged, and he took one look and grinned all over and he said this is it. Well, you know, I can't tell you what he's not paying any attention but I can say that it may [be] part of the act because when this confession was made he knew what he was doing then and that's the only time you're interested in,...."
[8] Thus, no motion for a mistrial was required to preserve the error for review. See C.Cr.P. Art. 841; State v. Williams, 373 So.2d 1278 (La.1979).
[9] The prosecutor said:

"Now, you know we have some acts that are just really beyond the bounds of society that we don't know what to do with and rape is one of them. In other words, itI got this idea from William Rasberry, who is a black editorial writer with the Washington Post, in writing about crime, he says certain acts are so far beyond the society's way ofthe pale of what you can accept and what you can't accept that you really don't know what punishment will fit the crime and that's why one man can walk out of the courtroom and say I believe in capital punishment, another one can say I believe in imprisonment and so on. But [what] this man is saying is that some of these crimes are so bad you've got to do something about them. And the crime of rape rates among the top three or four crimes in the United States. I'm not sure but with women that it rates number one. And I can tell you, in fact I'll tell you that I believe it's the worst crime in the world to most women."
[10] See State v. Hamilton, 356 So.2d 1360 (La. 1978); State v. Heads, 370 So.2d 564 (La.1979). See also United States v. Hawkins, 480 F.2d 1151 (D.C.Cir.1973). Some federal appellate courts have seemingly not been willing to reverse the convictions for improper closing argument, when the evidence is overwhelming and the argument does not raise inferences of prosecutorial knowledge of evidence of guilt outside the record or of racial prejudice. For an interesting discussion, see United States v. McRae, 593 F.2d 700 (5th Cir. 1979); United States ex rel. Haynes v. McKendrick, 481 F.2d 152 (2nd Cir. 1973); United States v. Morris, 568 F.2d 396 (5th Cir. 1978). See also ABA Standards: The Prosecution Function and The Defense Function, § 5.9 (1971).
[11] In State v. Berry, 391 So.2d 406 (La.1980) and State v. Lindsey, 404 So.2d 466 (La.1981), this court recently expressed concern over prosecutorial comment in closing argument regarding defendant's right to appeal a jury's death sentence and to seek executive clemency following a life sentence. This court warned in Berry and reversed in Lindsey. The court was concerned that such arguments may cause the jury to consider inappropriate factors in rendering their verdict, which must be based on the law and the facts presented, and not on the speculative possibility that someone may later fail in his duty to protect the legitimate rights of the public. See State v. Johnson, 151 La. 625, 92 So. 139 (1922), and State v. Farris, 147 La. 663, 85 So. 631 (1920).
[12] See State v. Sayles, 395 So.2d 695 (La.1981); State v. Bretz, 394 So.2d 245 (La.1981); State v. Henry, 196 La. 217, 198 So. 910 (1941); and State v. Horton, 151 La. 683, 92 So. 298 (1922).
[13] See State v. Johnson, above and State v. Farris, above. See also ABA Standards: The Prosecution Function and The Defense Function § 5.8 (1971).