879 So.2d 778 (2004)
STATE of Louisiana
v.
Jeremy HERRON.
No. 2003 KA 2304.
Court of Appeal of Louisiana, First Circuit.
May 14, 2004.
*781 Joseph L. Waitz, Jr., District Attorney, Mark Rhodes, Ellen Daigle Doskey, Assistant District Attorneys, Houma, for State of Louisiana.
Margaret Smith Sollars, Thibodaux, for Defendant-Appellant Jeremy Herron.
Before: PETTIGREW, DOWNING, and McCLENDON, JJ.
PETTIGREW, J.
The defendant, Jeremy Herron, was charged by bill of information with attempted second degree murder, a violation of La. R.S. 14:27 and 14:30.1. He pled not guilty. Following a trial by jury, the defendant was convicted as charged and sentenced to imprisonment at hard labor for twenty-five years, with credit for time served. The defendant filed a motion to reconsider the sentence. On reconsideration, the trial court amended the defendant's sentence to imprisonment at hard labor for fifteen years, with credit for time served. The defendant now appeals, urging the following assignments of error:
1. A mistrial should have been granted when the prosecutor elicited impermissible hearsay evidence and Brady material was withheld from the defense.
2. The evidence was insufficient to support the jury's verdict when the element of specific intent was not proven beyond a reasonable doubt.
For the following reasons, we set aside the judgment of the trial court and render judgment against the defendant for the lesser included offense of aggravated battery.

FACTS
In the early morning hours of June 22, 2000, pursuant to calculated plans to rob Michael Johnson ("the victim"), an alleged drug dealer, the defendant and Frederick Oatis kicked in the front door of the victim's residence. Armed with handguns, both men entered the residence. During the robbery attempt, a shot was fired, after which the defendant and Oatis fled. The victim sustained a non-fatal gunshot wound to the chest.[1]

SUFFICIENCY OF THE EVIDENCE
In cases such as this one, where the defendant raises issues on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should preliminarily determine the sufficiency of the evidence before discussing the other issues raised on appeal. State v. Hearold, 603 So.2d 731, 734 (La. 1992). The sufficiency issue must be decided first because a finding of insufficient evidence to support the guilty verdict bars the retrial of a defendant based on the *782 constitutional protection against double jeopardy. Thus, all other issues would be rendered moot. State v. Davis, XXXX-XXXX, pp. 2-3 (La.App. 1 Cir. 6/21/02), 822 So.2d 161, 163. Accordingly, we will first determine whether the evidence was sufficient to support the defendant's conviction for attempted second degree murder.
On appeal, the defendant contends the evidence adduced at trial was insufficient to support his conviction. Specifically, he argues the evidence failed to establish that he possessed the requisite specific intent to kill the victim.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La.Code Crim. P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1 Cir.1984). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in La.Code Crim. P. art. 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Nevers, 621 So.2d 1108, 1116 (La. App. 1 Cir.), writ denied, 617 So.2d 906 (La.1993); State v. McLean, 525 So.2d 1251, 1255 (La.App. 1 Cir.), writ denied, 532 So.2d 130 (La.1988).
Louisiana Revised Statutes 14:30.1(A) defines second degree murder, in pertinent part, as follows:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2)(a) When the offender is engaged in the perpetration or attempted perpetration of ... aggravated burglary ... [or] armed robbery ... even though he has no intent to kill or to inflict great bodily harm.
Under La. R.S. 14:27(A), a person is guilty of an attempt to commit an offense when he has a specific intent to commit a crime and "does or omits an act for the purpose of and tending directly toward the accomplishing of his object." Specific criminal intent is the state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. State v. Cummings, 99-3000, p. 3 (La.App. 1 Cir. 11/3/00), 771 So.2d 874, 876.
Louisiana Revised Statutes 14:24 defines "principals" as "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." While all persons "concerned in the commission of a crime" are principals under La. R.S. 14:24, this rule has important qualifications. All persons concerned in the commission of attempted first or second degree murder must possess the specific intent to kill to be found guilty of the offense. State v. LeBlanc, 94-0282 (La.6/3/94), 637 So.2d 489. An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. *783 State v. Bridgewater, XXXX-XXXX, p. 10 (La.1/15/02), 823 So.2d 877, 890, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003).
The record reflects that during the trial of this matter the State focused its case on two basic theories: 1) the defendant was the shooter and thus specifically intended to kill the victim, or 2) specific intent to kill was not required because the shooting occurred during the commission of an aggravated burglary or armed robbery. Although the State repeatedly argued its attempted felony-murder theory during the trial, it is well settled that, "[a] conviction of attempted second degree murder requires proof of specific intent to kill." State v. Franklin, 95-1876, p. 7 (La.1/14/97), 686 So.2d 38, 42. The crime of attempted second degree murder cannot be based upon an underlying felony. State v. Graham, XXXX-XXXX, p. 7 (La.App. 1 Cir. 2/14/03), 845 So.2d 416, 421. An attempt to commit second degree murder requires that the offender possess the specific intent to kill and commit an overt act tending toward the accomplishment of that goal. La. R.S. 14:27(A) and 14:30.1(A)(1).
Thus, in order to convict the defendant of attempted second degree murder, the State was required to prove, beyond a reasonable doubt, that the defendant specifically intended to kill the victim. This could be accomplished by proof that the defendant was the shooter (since the victim was shot in the chest at close range) or, under the law of principals, that the defendant and/or Oatis planned to utilize deadly force during the commission of the robbery. La. R.S. 14:30.1 and 14:24. In our review of the record, we are unable to discover any admissible evidence from which a trier of fact could reasonably find that the defendant specifically intended to kill the victim.
Although in opening arguments the State alleged the defendant was the shooter, there was no evidence presented to support this assertion. The only evidence as to the identity of the shooter came during the testimony of Detective Malcolm Wolfe, the investigating detective who spoke with the victim following the incident. Detective Wolfe testified that the victim identified Oatis from a photographic lineup as one of the perpetrators, but indicated that Oatis was not the shooter. In response to an objection by defense counsel, the trial court ruled this statement was inadmissible hearsay and admonished the jury to disregard it. The court specifically instructed the jury not to consider the statement as evidence. Thereafter, apparently relying upon the theory that a conviction for attempted second degree murder could be based upon the felony-murder provisions of La. R.S. 14:30.1, the State presented no further proof to establish that the defendant specifically intended to kill the victim.
The defendant did not testify at trial. However, the State introduced a taped statement the defendant provided to the police in connection with the investigation of this incident. Over the objection of defense counsel, the trial court ruled that the taped statement was admissible and allowed the jury to listen to the tape. In the statement, the defendant stated he and Oatis were in Thibodaux, Louisiana, on the day in question when Robert Cheatham approached them and indicated he knew an individual in Gibson they could rob for a large amount of marijuana. The defendant and Oatis agreed to participate in the robbery. Cheatham then drove the men to Gibson. The defendant and Oatis went to the victim's residence while Cheatham stayed behind for fear of being recognized by the victim, Cheatham's cousin.
*784 According to the defendant, Oatis kicked in the victim's door, and they entered the residence. The defendant indicated both he and Oatis were armed with handguns. Inside the residence, Oatis went to the room where the victim was located, and the defendant stayed near the front door as lookout. Shortly thereafter, the victim emerged from the room, Oatis hit the victim in the head with his gun, and a struggle ensued. The defendant claimed he did not engage in the struggle. During the struggle, a gunshot was fired. The defendant and Oatis immediately ran from the residence and went back to Thibodaux with Cheatham.
The evidence in this case, particularly the defendant's statement, clearly establishes that the defendant, Oatis, and Cheatham traveled to Gibson to rob the victim. The defendant's admitted participation in the robbery plans certainly made him a principal to the unauthorized entry into the victim's residence. However, the defendant's statement, which happens to be the only direct evidence of his intent, fails to prove he specifically intended to kill the victim. The defendant denied firing the shot that injured the victim and unequivocally indicated that the sole purpose of the break-in was to rob the victim of marijuana. While it is certainly possible that the defendant was the shooter or that he and Oatis planned to kill the victim, either of which would have supplied the requisite specific intent, the evidence, even when viewed in the light most favorable to the prosecution, does not support such findings. Proof of the defendant's participation in the robbery plans and subsequent attempt to carry them out, without more, does not support a rational inference that he specifically intended to kill the victim. Therefore, the evidence is insufficient to support the defendant's conviction for attempted second degree murder.
In his other assignment of error, the defendant contends the trial court erred in denying his motion for a mistrial. The defendant cites two instances that he argues mandate a mistrial. First, the defendant contends a mistrial should have been granted when impermissible hearsay evidence was introduced during the testimony of Det. Wolfe. The defendant also avers a mistrial was warranted based upon the fact that the State withheld information favorable to him, in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
La.Code Crim. P. art. 771 provides, in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
* * *
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
A mistrial is warranted when certain remarks are considered so prejudicial and potentially damaging to the defendant's rights that even a jury admonition could not provide a cure. State v. Edwards, 97-1797, p. 19 (La.7/2/99), 750 So.2d 893, 906, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). Mistrial is a drastic remedy that is authorized only where substantial prejudice will otherwise result to the accused. State v. *785 Anderson, XXXX-XXXX, p. 19 (La.App. 1 Cir. 3/28/01), 784 So.2d 666, 682, writ denied, XXXX-XXXX (La.4/19/02), 813 So.2d 421. A trial court's ruling denying a mistrial will not be disturbed absent an abuse of discretion. State v. Givens, 99-3518, p. 12 (La.1/17/01), 776 So.2d 443, 454.

HEARSAY
As a result of questioning posed during the direct examination of a State's witness, Det. Malcolm Wolfe, the trial court held a hearing, outside the presence of the jury, to determine the admissibility of statements made by the deceased victim to Det. Wolfe. At the conclusion of the hearing, the trial court held that the statements provided by the victim were inadmissible hearsay and not subject to any hearsay exception. The court instructed, "there will be no testimony admitted as to any statement Mr. Johnson made[.]"
Back before the jury, the prosecutor questioned Det. Wolfe about his investigation in this case. Det. Wolfe testified that during his investigation he received information developing co-defendant, Frederick Oatis, as a suspect. The prosecutor then questioned Det. Wolfe regarding the procedures used to confirm Oatis's identity as a participant in the offense. The following exchange occurred:
Q. ...Armed with the information that Frederick Otis (sic) might be a suspect, did you get him (sic) mug shot or a photograph of Mr. Oatis?
A. Yes, I did.
Q. Did you put the photograph in a photographic lineup?
A. Yes, sir.
* * *
Q. ...Did you go to the hospital and show that lineup to Mr. Johnson?
A. Yes, sir, I did.
Q. What did he do when you showed it to him?
A. Within five seconds he identified Frederick Oatis as being one of the people but not the shooter.
Without any objection by the defense, the prosecutor continued to question Det. Wolfe regarding the victim's identification of Oatis. Later in the examination, the prosecutor asked:
Q. All right. When he picked out Oatis, this confirmed his statement from the very beginning that he recognized somebody from being related to somebody from Labadieville?
A. Yes, sir.
Q. And he clearly indicated that Mr. Oatis was not the man that shot him?
A. Correct.
Again, there was no objection to this testimony by the defendant. Moments later, when the prosecutor moved to introduce the photographic array into evidence, the counsel for the defendant objected to Det. Wolfe's statement as to what the victim said as hearsay. The defendant further indicated he intended to "backtrack" his objection to include an objection to the lineup as hearsay and to the entire line of questioning regarding the lineup as hearsay. The court ruled, "...because of the events that have transpired, I'm going to, at least as to what has transpired so far, overrule the objection, and I will allow the lineup into evidence."
The trial continued. Later, following a court recess, counsel for the defendant moved for a mistrial based upon the aforementioned hearsay evidence. Counsel argued that Det. Wolfe's comment, which led to an inference that the defendant was the shooter, was irreparably prejudicial. Counsel further argued that the photographic lineup was also inadmissible hearsay evidence and was erroneously allowed *786 into evidence. In denying the defendant's motion for a mistrial, the trial court ruled:
... With regard to the lineup and the statement from Det. Wolfe as to what the victim, Michael Johnson, told him, it was always the Court's position that the lineup constituted hearsay evidence. But there was no objection to the lineup itself and the testimony about the lineup. It appears that the problem came when Det. Wolfe, in response to a question, indicated that Mr. Johnson, the victim, had identified Mr. Oatis from the lineup and identified him as one of the individuals involved in the shooting incident that's been described to the jury. But it was when Det. Wolfe added something along the lines of "and he told me he was not the shooter." That seems to be where the problem has come in.
The Court's ruling with regard to the lineup evidence, that is, the photographic lineup, which was actually introduced into evidence, the Court feels was correct. However, now that Mr. Whipple has asked that the photographic lineup not be made part of the evidence, the Court will grant his request and will hold that the photographic lineup is not part of the evidence in this case. The Court will instruct the jury that the photographic lineup is not to be considered evidence and that it has been withdrawn as evidence.
Now, with regard to the statement that Det. Wolfe made as to what the deceased told him, that is, that Mr. Oatis was not the shooter. The Court believed that part of Det. Wolfe's testimony is hearsay and the Court will instruct the jury that they are to disregard any statements made by Michael Johnson to Det. Wolfe, inasmuch as they are not admissible under any exception to the hearsay rule.
The State objected to the court's ruling.
In connection with its ruling on the hearsay evidence, the trial court admonished the jury as follows:
Earlier today, you were allowed to view a photographic lineup and you heard testimony from Det. Wolfe about that photographic lineup. The Court has determined that that evidence is inadmissible. So any evidence that you have heard about that photographic lineup and the testimony of Det. Wolfe with regard to that lineup you are to entirely disregard as if you never heard it. It is not evidence in this case.
In addition, any statement that Det. Wolfe had made while testifying as to what the deceased in this case, Michael Johnson, said to him is inadmissible and it is not evidence and you are to entirely disregard that testimony by Det. Wolfe.
Upon our review of the record, we find no error or abuse of discretion by the trial court in denying the defendant's motion for a mistrial. A contemporaneous objection is necessary to preserve the issue for appellate review. La.Code Crim. P. art. 841(A); La.Code Evid. art. 103(A)(1). An objection made after the evidence is before the jury comes too late. State v. Bretz, 394 So.2d 245, 251 (La.), cert. denied, 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981). The record reflects that the defendant's objection to the evidence in question was untimely. Thus, any prejudice that might have resulted from Det. Wolfe's statements was attributable to the defendant's tardy objection. Moreover, even after noting that Det. Wolfe's statements initially came in without objection, the trial court sustained the defendant's untimely objection and ruled the statements inadmissible. The court then withdrew the previously admitted photographic lineup and, on its own motion, admonished the jury to disregard all of the contested evidence. We do not find *787 that the trial court abused its discretion in opting to issue an admonishment in lieu of a mistrial. In fact, we conclude that the trial court effectively remedied the problem created by the defendant's failure to object timely. The court's exclusion of the hearsay evidence and its specific admonishment to the jury sufficiently cured any prejudice.
This argument lacks merit.

BRADY VIOLATION
Next, the defendant contends the trial court should have granted a mistrial based upon the ground that the State failed to disclose exculpatory evidence.
The record reflects that after the trial court denied the defendant's motion for a mistrial based upon the introduction of inadmissible hearsay evidence, the prosecutor informed the court that he had just learned, during the recess, that during the police investigation, the victim failed to identify the defendant in a prepared photographic lineup. The prosecutor denied any prior knowledge of the potentially exculpatory evidence.
Thereafter, the defendant moved for a mistrial based upon the late disclosure of exculpatory evidence. Although he acknowledged that the prosecutor did not have the contested evidence in his file, the defendant argued that the enforcement agency's failure to disclose favorable evidence also violates Brady, and warrants a mistrial. The trial court denied the motion for a mistrial and provided the following reasons:
It appears to the Court that this testimony that Det. Wolfe could give, that is, that the victim Michael Johnson was unable to identify Mr. Herron in a photographic lineup a short period of time after Mr. Herron gave an audiotaped statement to Det. Wolfe, that evidence it would appear on its face to be exculpatory to some extent and favorable to Mr. Herron.
However, for the same reasons that the testimony concerning Mr. Johnson's statements to Mr. Wolfe about the Oatis photographic lineup, that is, that that testimony is inadmissible as hearsay, it would appear to the Court that this so-called exculpatory evidence for Mr. Herron would also be inadmissible as hearsay.
Now, having said that and for that reason, the Court, despite the delay in revelation of this information to the defendant, is not going to grant a mistrial because the Court is hard pressed to understand how, if the evidence is inadmissible, the defendant would be prejudiced in any way.
The purpose of pretrial discovery procedures is to eliminate unwarranted prejudice to a defendant that could arise from surprise testimony. State v. Mitchell, 412 So.2d 1042, 1044 (La.1982). Discovery procedures enable a defendant to properly assess the strength of the State's case against him in order to prepare his defense. State v. Roy, 496 So.2d 583, 590 (La.App. 1 Cir.1986), writ denied, 501 So.2d 228 (La.1987). If a defendant is lulled into a misapprehension of the strength of the State's case by the failure to fully disclose, such a prejudice may constitute reversible error. State v. Ray, 423 So.2d 1116, 1118 (La.1982).
Under the United States Supreme Court decision of Brady, the State, upon request, must produce evidence that is favorable to the accused where it is material to guilt or punishment. This rule has been expanded to include evidence that impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. Giglio v. U.S., 405 U.S. 150, 154-155, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 *788 (1972). Where a specific request is made for such information and the subject matter of such a request is material, or if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the information to the trial judge for an in camera inspection. See U.S. v. Agurs, 427 U.S. 97, 106, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976); State v. Cobb, 419 So.2d 1237, 1241 (La.1982).
The test for determining materiality was firmly established in U.S. v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), and has been applied by the Louisiana Supreme Court. See State v. Rosiere, 488 So.2d 965, 970 (La. 1986). The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Bagley, 473 U.S. at 682, 105 S.Ct. at 3383.
The fact that the victim failed to identify the defendant as a perpetrator is obviously exculpatory evidence. It fails to constitute material evidence in this case, however, because confidence in the outcome of trial is not undermined by its disclosure. Because the defendant in this case gave a taped statement confessing his participation in the offense, it is not reasonably probable that the result of the proceeding would have been different had evidence of the victim's failure to identify the defendant as one of the perpetrators been disclosed to the defense. Moreover, as the trial court correctly noted, any out of court statements by the victim had already been ruled inadmissible. Thus, it is unlikely that the identification information would have been allowed into evidence. Accordingly, the trial court did not err or abuse its discretion in failing to grant a mistrial on the basis of a Brady violation.
This argument lacks merit.
We now focus our attention on whether a conviction for a lesser included offense may be substituted for the jury's verdict. Louisiana Code of Criminal Procedure article 821(E) provides that if an appellate court finds the evidence, viewed in the light most favorable to the State, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense. The responsive guilty verdicts to a charge of attempted second degree murder are attempted manslaughter and aggravated battery. See La.Code Crim. P. art. 814(A)(4). As with attempted second degree murder, specific intent to kill is an essential element of attempted manslaughter. See State v. Brunet, 95-0340, p. 5 (La.App. 1 Cir. 4/30/96), 674 So.2d 344, 347, writ denied, 96-1406 (La.11/1/96), 681 So.2d 1258. We have already concluded there is insufficient evidence to establish that the defendant possessed specific intent to kill the victim. Thus, the evidence is insufficient to support a conviction for attempted manslaughter. However, following our extensive review of the record, we find the evidence sufficient to support a finding that the defendant acted as a principal in the aggravated battery of the victim.
Pursuant to La. R.S. 14:33, battery is defined, in pertinent part, as "the intentional use of force or violence upon the person of another." Aggravated battery is a battery committed with a dangerous weapon. La. R.S. 14:34. An aggravated battery conviction requires proof of only general criminal intent or showing that the defendant, in the ordinary course of human experience, must have adverted to the *789 prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10; State v. Freeman, 2001-997, p. 4 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 581.
As previously indicated, the defendant admitted that he, Oatis, and Cheatham went to Gibson to rob the victim. Oatis kicked in the victim's door, and the defendant and Oatis entered the victim's residence. Both men were armed with handguns. While inside the victim's residence, Oatis hit the victim in the head with his gun, a struggle ensued, and a gunshot was fired, striking the victim. Thereafter, the defendant and Oatis immediately ran from the victim's residence.
Based on our review of the record herein, we are satisfied that the evidence produced by the State was sufficient to prove beyond a reasonable doubt that the defendant had the requisite general intent and was guilty as a principal to the aggravated battery of the victim. Accordingly, we must modify the defendant's conviction and render a judgment of conviction on the lesser included responsive offense of aggravated battery.

CONCLUSION
For the above and foregoing reasons, we find the evidence insufficient to support a conviction of attempted second degree murder but sufficient to support a conviction of aggravated battery. Thus, we set aside the defendant's conviction and sentence for attempted second degree murder. We hereby modify the jury's verdict, render a judgment of guilty of aggravated battery, and remand the case to the trial court for sentencing.
CONVICTION AND SENTENCE SET ASIDE; JUDGMENT OF GUILTY OF AGGRAVATED BATTERY RENDERED; REMANDED FOR SENTENCING.
NOTES
[1] The record indicates that the victim was killed in an unrelated incident four months later.