NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-1118

STATE OF LOUISIANA

VERSUS

PATRICK PAUL GEORGE

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 127,278
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Phyllis M. Keaty, Judges.

AFFIRMED.

Alan P. Haney
Assistant District Attorney
Post Office Box 4308
Lafayette, Louisiana  70502
(337) 291-7009
Counsel for Appellee:
        State of Louisiana

**Annette Roach**
**Louisiana Appellate Project**
**Post Office Box 1747**
**Lake Charles, Louisiana  70602-1747**
**(337) 436-2900**
**Counsel for Defendant/Appellant:**
**Patrick Paul George**

**Patrick Paul George**
**Louisiana State Penitentiary**
**General Delivery**
**Angola, Louisiana  70712**
**In Proper Person**

**KEATY, Judge.**

On April 21, 2010, the State filed a bill of information charging Defendant, Patrick Paul George, with possession of cocaine with intent to distribute, a violation of La.R.S. 40:967. Defendant filed a motion to suppress which the trial court denied after a hearing. On February 29, 2012, a jury found Defendant guilty as charged. Defendant was sentenced to thirty years at hard labor, with the first two years to be served without benefit of parole, probation, or suspension of sentence. Defendant now appeals, assigning two errors through counsel and a single error *pro se*. For the following reasons, Defendant's conviction is affirmed.

## DISCUSSION

### *Facts*

On the evening of December 18, 2009, Officer Jeremy Dupuis of the Lafayette Police Department's Crime Suppression Unit noticed a black Jeep Liberty executing a right turn without first activating its right turn signal. Dupuis testified that the signal was not activated until the Jeep was already turning. The officer then conducted a traffic stop due to the failure to signal before the turn.

The Jeep stopped in a parking lot; Dupuis exited from his vehicle and used his loudspeaker system to advise the Jeep's driver to get out of it. Defendant, the driver, did not comply, and Dupuis observed him placing something between the front seats of the Jeep. The officer tried to open the driver's door, but it was locked. After repeated commands to exit the Jeep, Defendant finally got out.

Dupuis handcuffed Defendant for safety and to minimize any further resistance to police commands. The officer sat Defendant in the back of his police unit and advised him of his *Miranda* rights. Dupuis then walked back to the Jeep;

and through the still-open driver's door, he saw a pink "huggie"[1] and a plastic bag in plain view containing what appeared to be both crack and powder cocaine. As they were headed to jail, Defendant told Dupuis he was selling illegal drugs to pay back a debt.

## *Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find no errors patent.

## *Assignments of Error Numbers One and Two*

Defendant's counsel-filed assignments are combined into a single argument. He argues the traffic stop was constitutionally invalid, as Dupuis had subjective motivations to stop him that were unrelated to the traffic offense. He further argues that his admission to Dupuis should have been suppressed as it stemmed from the traffic stop.

Defendant acknowledges *Whren v. U. S.,* 517 U.S. 806, 116 S.Ct. 1769 (1996), in which the Supreme Court held that the constitutional propriety of a traffic stop does not depend upon a police officer's subjective motives for making the stop. Essentially a traffic stop is reasonable if the officer has "probable cause to believe that a traffic violation has occurred." *Id.* at 810. Under *Whren*, even minor traffic offenses will support a stop.

Defendant also observes a factually similar case in which this court affirmed a traffic stop. *See State v. Rector*, an unpublished opinion bearing docket number 08-211 (La.App. 3 Cir. 12/10/08). However, he tries to distinguish *Rector* on the

---

[1]Officer Christine Bernard, who assisted Dupuis in the stop of Defendant, testified that the "huggie" could also be referred to as a "coozie."

2

basis that the defendant in that case had been seen before the stop engaging in suspicious activities. Also, once he was stopped, Rector admitted having marijuana in his possession.

Defendant states:

> What *Whren* sought to prohibit were Fourth Amendment attacks on the basis of the subjective intent of the officer; it is submitted that the Court did not intend to permit law enforcement the ability to ignore the rights of the citizens of this country. . . . This is especially true where an officer arrests an individual for what is at most a very minor traffic offense. . . .

Defendant fails to support this argument with any jurisprudence. Even considering *Rector* to be partially distinguishable as he argues, we conclude that *Rector* and *Whren* do not support Defendant's argument in the present case. Pursuant to *Whren*, the subjective motives or intent of Dupuis are irrelevant, and the traffic violation supported the stop. Considering the complete lack of legal support, Defendant's argument regarding the traffic stop fails.

Regarding the search, Defendant argues that Dupuis' viewing of the cocaine was an improper search pursuant to *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710 (2009), which curtailed the police authority to conduct automobile searches incident to arrests. We note the fifth circuit's comment on a similar claim: "Defendant argues that the seizure of the gun was illegal under *Arizona v. Gant,* []. However, because the firearm was properly seized under the plain view exception to the warrant requirement, it is unnecessary to discuss *Arizona v. Gant,* [] as it relates to the instant case." *State v. Burton*, 11-1023, p. 10 (La.App. 5 Cir. 5/22/12), 98 So.3d 375, 382 n.6, *writ denied*, 12-1422 (La. 1/11/13), 106 So.3d 547. *Gant* did not involve a "plain view" situation. *Gant* addressed searches

incident to arrest, which have formed the basis of a line of jurisprudence separate from "plain view" scenarios.

Further, the supreme court has explained the following :

> After review, we find the trial court erred in granting the motions to suppress the evidence and the statements on the basis of *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), which we find to be distinguishable. The facts of this case indicate there was no search incident to arrest as in *Gant*; rather, after arresting defendant for a traffic violation, one officer entered defendant's vehicle for the purpose of securing it by rolling up the windows and turning off the engine. In the process of performing this "caretaking" function, the officer observed, in plain view, an unzipped backpack behind the passenger seat containing three plastic bags of marijuana. Because (1) there was prior justification for the police intrusion into the vehicle for purposes of turning off the engine and rolling up the windows, and (2) it was immediately apparent to the officer without close inspection that the backpack contained contraband, the "plain view" exception to the warrant requirement applies, and the seizure of the contraband was permissible. *See Horton v. California*, 496 U.S. 128, 135-136, 110 S.Ct. 2301, 2307, 110 L.Ed.2d 112 (1990); *State v. Leger*, 05-0011, p. 65 (La.7/10/06), 936 So.2d 108, 155, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007).

*State v. Arnold*, 11-626, pp. 1-2 (La. 4/27/11), 60 So.3d 599, 600.

In the instant case, the officer merely looked through an open car door and saw the contraband. Thus, *Gant* does not apply, and this portion of Defendant's argument lacks merit.

Defendant also argues that under state jurisprudence, "police cannot create street encounters." We again note a comment by the fifth circuit:

> In his appellant brief, defendant cites *State v. Hathaway*, 411 So.2d 1074, 1079 (La.1982), for the proposition that the police cannot create street encounters without knowledge of suspicious facts and circumstances sufficient to allow them to infringe on a defendant's right to be free from government interference. Defendant relies on *Hathaway* to support his position that Officer Balser intentionally created a "street encounter" for the sole purpose of searching defendant's vehicle. *Hathaway* is inapplicable to the present case. Unlike the present case, *Hathaway* did not involve a stop for a traffic violation, but rather involved an informant's tip about illegal drug

4

activity and the right of an officer to pursue a fleeing defendant into an apartment after attempting to conduct an investigatory stop. As stated above, a traffic violation gives an officer probable cause to stop the vehicle.

*State v. Wolff*, 09-508, p. 6 (La.App. 5 Cir. 12/29/09), 30 So.3d 897, 902, n.3.[2] We conclude that the reasoning of the footnote in *Wolff* also applies to the present case. Thus, this portion of Defendant's argument lacks merit.

Defendant also argues there were inconsistencies between the testimonies of Dupuis and another officer who arrived on the scene, Christine Bertrand. First, he observes that Dupuis' report did not mention Bertrand's presence on the scene. Next, he notes that Bertrand testified that she went to the scene out of fear that Defendant might have a weapon; however, another portion of her testimony suggested that she went out simply because she was on call just as Dupuis was. Also, the two officers described the contraband in Defendant's car differently. Dupuis stated about an inch of a plastic bag was hanging out of a huggie with one "rock" of crack cocaine visible. Bertrand's testimony suggested she could see more than just one rock when she looked in the car. These inconsistencies, if they can be so termed, are minor. Further, as Defendant acknowledges, the trial court's findings should be given great weight and should be overturned only if they are clearly erroneous. Therefore, this portion of Defendant's argument lacks merit.

Finally, Defendant cites *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407 (1963), the "fruit of the poisonous tree" case.[3] *Wong Sun* does not apply since Defendant has not demonstrated that the traffic stop at issue was constitutionally invalid. Thus, there was no "poisonous tree" in this case.

---

[2]Defendant in the present case also cites *Hathaway*.

[3]Defendant does not appear to have raised this specific argument below. However, it was arguably subsumed within a general objection he made after another issue had been addressed. Therefore, out of an abundance of caution, we address the issue.

For the reasons discussed, this assignment lacks merit.

## *Pro Se Assignment of Error*

In his lone pro se assignment of error, Defendant argues the trial evidence lacked a proper chain of custody regarding the evidence. The following colloquy occurred immediately after the testimony of forensic chemist Amanda Hebert:[4]

> THE COURT:     Anything else?
>
> MR. ALONZO:     I object to the chain of custody. We object to this particular evidence. Number one, Jim Marsh did not testify; and two, the weight reduction evidence.
>
> THE COURT:     All right. First of all, I note that your request to me was during the Forensic Chemist's testimony. The physical evidence had already been put into evidence, I believe without objection.
>
> MR. HANEY:     That's correct.
>
> THE COURT:     All right. That's all.

Earlier in the trial, the State offered the cocaine as evidence. The court allowed Defendant to traverse Dupuis; trial counsel's questions to the officer focused on a difference in weight between the amount of crack cocaine shown on the arrest affidavit and the amount shown on the lab report, which was approximately 4.2 grams lighter.[5] The weight disparity of the powder cocaine was 1.4 grams. Counsel suggested the cocaine offered was not the same cocaine seized at Defendant's arrest. Dupuis opined that it was the same cocaine but could not explain the weight difference. The State then objected to the questioning, and the following colloquy occurred:

---

[4] Regarding the "request" mentioned by the trial court, the colloquy cited occurred immediately after the testimony Hebert. Our review of the record does not show any objection to the evidence *during* her testimony. Thus, the trial court must have been referring to the objection made in the colloquy cited.

[5] Two different original weights are mentioned: 22.6 grams and 18.4 grams. The arrest affidavit, which was discussed at trial and is included in the appellate record, indicates the lighter weight is correct. However, the affidavit was not entered into the trial evidence.

A     I believe it is the same evidence.  Yes.

Q     Well, it doesn't appear to be the same evidence package that you turned in because in that evidence package there was almost 32 grams of crack and powder combined. And yet we have almost six and a half or seven grams less, according to the lab report, correct?

A     Yes.

Q     Can you explain that?

A     I cannot.

MR. HANEY [Prosecutor]:  I'm going to object to this.

MR. ALONZO:  That's all the questions, Your Honor.

THE COURT:  Any additional questions, Counsel?

MR. ALONZO:  Not of this witness, Your Honor.

MR. HANEY:  It goes to the weight of the evidence.

THE COURT:  Objection is overruled. The package is admitted into evidence as State Exhibit 1.

MR. HANEY: Thank you, Your Honor.

Thus, it appears Defendant did not contemporaneously object to the introduction of the cocaine into evidence.  As shown by the first colloquy cited, the trial court also believed there had been no such objection.  Defendant did not challenge the court on this point.

The first circuit has stated:

A contemporaneous objection is necessary to preserve the issue for appellate review.  La.Code Crim. P. art. 841(A); La.Code Evid. art. 103(A)(1).  An objection made after the evidence is before the jury comes too late. *State v. Bretz*, 394 So.2d 245, 251 (La.), *cert. denied*, 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981).  The record reflects that the defendant's objection to the evidence in question was untimely.  Thus, any prejudice that might have resulted from Det. Wolfe's statements was attributable to the defendant's tardy objection.

*State v. Herron*, 03-2304, p. 10 (La.App. 1 Cir. 5/14/04), 879 So.2d 778, 786.[6] In

*Herron*, the trial court had reversed its own earlier admission of a photographic

lineup, withdrew it from the record, and admonished the jury to disregard it. *Id.*

Nonetheless, the reasoning quoted above is sound and comports with the plain

language of the articles cited therein. For the reasons discussed, the issue was not

preserved for appellate review.

## DECREE

For the foregoing reasons, Defendant's conviction is affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.

---

[6]Louisiana Code of Evidence Article 103 states, in pertinent part:

**A. Effect of erroneous ruling**. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

**(1) Ruling admitting evidence**. When the ruling is one admitting evidence, a timely objection or motion to admonish the jury to limit or disregard appears of record, stating the specific ground of objection. . . .